THE STATE, Appellant, v. GEORGE C. GREEN ET AL.—130 S. W. (2d) 475.

Division Two, July 7, 1939.

986

*Roy McKittrick*, Attorney General, *W. J. Burke*, Assistant Attorney General, *W. W. Graves*, *M. W. O'Hern* and *John Wendorff* for appellant.

*Byron Spencer, James T. Britt* and *Langworthy, Spencer, Terrell & Matz* for D. E. Dunlop, Arthur Dunlop, Arnold Held, W. L. Martin, George C. Green, A. O. Long, James Long, J. C. Johnston, Louis Kartsonis, Bert Frable, B. M. Hall, J. H. Hollingsworth, W. C. Beckwith, William Jacobs, Benno Jacobson and N. Cortez; *Kaer P. Vanice, II*, for Harry H. Gillpatrick and Harry Bahl.

WESTHUES, C.—By an indictment of grand jury of Jackson County, Missouri, respondents were charged with a violation of Section 8701, Revised Statutes 1929 (Mo. Stat. Ann., p. 6487). The trial court sustained a demurrer to the indictment and the State appealed. Respondents, twenty-six in number, where charged with entering into a pool, trust, agreement, combination, confederation and understanding to regulate and control the price of laundry service in Kansas City, Missouri.

The sole question on this appeal is whether the laundry business comes within the terms of Section 8701, supra. This section reads as follows:

"Any person who shall create, enter into, become a member of or participate in any pool, trust, agreement, combination, confederation, or understanding with any other person or persons to regulate, control or fix the price of any article of manufacture, mechanism, merchandise, commodity, convenience or repair, or any product of mining, or any article or thing whatsoever, of any class or kind bought and sold, or the price or premium to be paid for insuring property against loss or damage by fire, lightning or storm, or to maintain said price when so regulated or fixed, or shall enter into, become a member of or participate in any pool, trust, agreement, contract, combination, confederation or understanding, to fix or limit the amount or quantity of any article of manufacture, mechanism, merchandise commodity, convenience, repair, any product of mining, or any article or thing whatsoever of any class or kind bought and sold, or the price or premium to be paid for insuring property against loss or damage by fire, lightning or storm, shall be deemed and adjudged guilty of a conspiracy in restraint of trade, and be punished as provided for in this article."

Respondents insist that statutes pertaining to the criminal

law must be strictly construed against the State. As a general rule that is correct. Appellant contends the statute should be liberally construed. The section under consideration is declaratory of the common law. In 12 Corpus Juris, 542, section 3, we find the following concerning the history of this law:

"Conspiracy was an offense known to the ancient English common law, antedating all legislative enactments. It is not true, as has been supposed by some, that this offense was created by the statute of 33 Edw. I; nor can it be correctly stated that this statute either abrogated or restricted the principles applicable to conspiracy as it existed at common law. The fact is, the statute, 33 Edw. I, must be considered either as only declaratory of the common law, as far as it goes, operating to remove doubts and difficulties which may have existed with reference to the conspiracies which it enumerates, by giving them a particular and definite description, or as superadding them to other classes of conspiracy already known to the law, leaving the common law unaffected beyond the express provisions of the statute."

This court in State ex inf. Hadley, Atty. Gen., v. Standard Oil Co., 218 Mo. 1, 1. c. 359, 116 S. W. 902, 1. c. 1012, said:

"The respondents contend that the statutes under consideration are highly penal, and should for that reason be strictly construed, and that the contention of the informant should not be concurred in by the court; and they cite many authorities in support of their contention. While it is true these sections of the statute provide for forfeitures of charters and the revocation of licenses of corporations to do business in this State, yet they are not in derogation of the common law, as the authorities heretofore cited firmly establish, but are intended to be in aid of and supplementary thereto, highly salutary and remedial in their purpose; and the mere fact that heavy losses may be sustained by respondents in consequence of an adjudication of ouster should not influence or deter the court from declaring the intention of the Legislature as contained in those articles."

■ It cannot be said that the statute under consideration, even if liberally construed, would include within its terms the laundry business. A laundry does not deal with articles of commerce. The statute outlaws all agreements, ". . . to regulate, control or fix the price of any *article* of manufacture, mechanism, merchandise, commodity, convenience or repair, or any product of mining, or any *article or thing* whatsoever, of any class or kind bought and sold, . . ." (Italics ours.)

Laundries do not sell any articles which come within the terms of the statute. True, the operation of a laundry is a business. However, it sells a service and nothing more. It may be a convenient way for thousands of people to have their linen laundered, hence a con-

venience, but it is not an article of convenience bought and sold as the statute implies. It seems plain that the statute has made it unlawful for any person to enter into a pool or combination to fix the price of any article of commerce to be bought and sold. The statute so concludes. Note, ". . . or thing whatsoever of any class or kind bought and sold, . . ." There is nothing in the ordinary course of the laundry business that is bought and sold. The words "commodity" and "or repair" are used in the statute in connection with the clause "control or fix the price of any article of . . .", clearly indicating that what was meant was all articles of trade and commerce. The Supreme Court of Arkansas had a similar statute under consideration in the case of State ex rel. Moose, Atty. Gen., v. Frank et al., 169 S. W. 333. The court there held that laundries were not included within the terms of the statute. Appellant cites the case of Endicott v. Rosenthal, 216 Cal. 721, 16 Pac. (2d) 673. That case involved an agreement to fix the price of cleaning and dyeing. The statute there considered was much broader than our statute. It included "business of any kind." If our statute contained a similar phrase we would not hesitate to rule that laundries come within the term "business of any kind." If the people engaged in laundry and similar business enterprises enter into pools to fix prices and stifle competition so as to be injurious to the general welfare of the public at large, the remedy lies with the Legislature. The statute can be amended to meet such a condition. Until then, if the prices charged by the commercial laundries are too high, we will just have to do our own washings. Our opinion is, that, as the statute now reads, laundries are not included within its terms.

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.